1  **WO**

2  NOT FOR PUBLICATION

3

4

5

6  IN THE UNITED STATES DISTRICT COURT

7  FOR THE DISTRICT OF ARIZONA

8

9  Nicole Blake,                                   )   No. CV-10-2435-PHX-GMS
                                                  )
10            Plaintiff,                          )   **ORDER**
                                                  )
11  vs.                                           )
                                                  )
12  Irwin Mortgage a subsidiary of Irwin          )
    Financial Corp; Midland Mortgage Corp a       )
13  subsidiary of Midfirst Bank; and Midland      )
    Financial Co, the holding company of          )
14  Midfirst Bank,                                )
                                                  )
15            Defendants.                         )
                                                  )
16  _____          )

17       Pending before the Court are: (1) Defendant Midland Mortgage Co., Midland

18  Financial Co. And MidFirst Bank's ("The Midland Defendants") Motion to Dismiss or, in

19  the Alternative, Motion for Summary Judgment (Doc.4); and (2) Plaintiff's Motion for a

20  Temporary Restraining Order (Doc. 6). For the following reasons, the Court grants the

21  Midland Defendants Motion to Dismiss with leave to amend and denies Plaintiff's Motion

22  For Temporary Restraining Order.

23                              **BACKGROUND**

24       On or about late October 2003, Plaintiff borrowed $137,258.00 from Irwin Mortgage

25  Corporation. The loan was evidenced by a promissory note that was secured by a deed of

26  trust on property located at 10620 E. Ananea Avenue in Mesa, Arizona. The beneficiary on

27  the deed was Mortgage Electronic Registration Systems, Inc. as the nominee of the lender

28  and its successors and assigns. Plaintiff alleges that after she signed the documents,

Defendants "did fail to lend the Plaintiff lawful money of the United States for the full value of the alleged loan." Doc. 1 at ¶ 19. The Complaint alleges that Defendants, "in carrying out their commitment to lend lawful money of the United States" "did write a check for the sum of One Hundred Thirty Seven thousand Two Hundred Fifty Eight Dollars ($137, 258)." But, the Complaint alleges, the "check or checks which the Defendants wrote were not backed by or redeemable in Federal Reserve Notes, coins or lawful money of the United States for their full face value," *id.* at ¶ 24, and that "the only consideration which the Defendants provided for this alleged loss was a book entry demand deposit which the Defendants created effortlessly and at virtually no cost to itself, and that in stamping its own check 'Paid'" the bank made "false representations as it merely transferred some book entries and never intended to redeem this check in lawful money of the United States. *Id.* at ¶ 28.

The Complaint further alleges, apparently in the alternative, that in issuing the check the bank "did deliberately make a loan beyond its customers' deposits." *Id* at ¶ 23. It also alleges that Defendants did use "the US Postal Service on numerous occasions . . . to collect monies on this debt." *Id.* at ¶ 25.

Also according to the Complaint, the promissory note specified that the annual adjustable interest rate was 4.0%. *Id.* at ¶ 18. The ceiling on any possible adjustments was apparently a 9.0% interest rate. The Complaint alleges that Defendants ended up charging an interest rate that was "estimated to be twenty (20) times greater than what was authorized in the documents." *Id.* at ¶ 21.

On August 5, 2010, MERS purportedly assigned the beneficial interest in the Deed of Trust to MidFirst Bank. Plaintiff thereafter filed the instant complaint on November 10, 2010. The Complaint contains four counts. The first, for breach of contract, alleges that "the Defendants failed to lend the Plaintiffs lawful money of the United States and instead submitted a check with the intended purpose of circulating it as money." *Id.* at ¶ 32. The second, denominated as a count of fraud, alleges that Defendants used the US Mail and Wire Services to collect on the debt in violation of 18 U.S.C. §§ 1341 and 1343. The third, a count of usury, alleges that by creating and passing a bad check on which they collected interest

at a rate that was twenty times greater than the amount of interest specified in the Note, Defendants violated the contract because the unlawful money risked by Defendants in making the loan was less than 5% of the loan's face value.  The Fourth, a truth-in-lending claim alleges that in making the $137, 258 loan the bank made a loan beyond its customer's deposits which when redeposited by Plaintiff with the bank, resulted in the bank's failure to make the material disclosure to the bank that Plaintiff was the depositor and Defendants risked none of its assets in the exchange, nor did the bank risk any of the assets of its other depositors.   The Midland Defendants moved to dismiss or alternatively for summary judgment (Doc. 4).  Thereafter, Plaintiff filed her Motion for Temporary Restraining Order (Doc. 6).

**ANALYSIS**

**I.    The Midland Defendants' 12(b) Motion.**

The claims as they are set forth in Plaintiff's Complaint apparently relate to Irwin Mortgage.  It is unclear what claims, if any, Plaintiff asserts against the Midland Defendants. When a party brings claims against multiple defendants the party must clearly specify the claims with which each party is charged."  Wright & Miller, Federal Practice and Procedure § 1248 (2009 ed.).   This Plaintiff has not done with respect to the Midland Defendants.

Further when bringing a complaint, Plaintiff must plead sufficient facts "to state a claim for relief that is plausible on its face."  *Bell Atlantic v. Twombly,* 550 U.S. 544, 570 (2007) (holding that a plaintiff has an obligation to allege sufficient facts to plausibly allege grounds upon which he claims his entitlement to relief and that mere labels and conclusions or a formulaic recitation of the elements of a claim is insufficient.").  Plaintiff's Complaint also fails in this respect.

The substantial underlying assumption of Plaintiff's Complaint, and each of Plaintiff's four counts, appears to be that Plaintiff never actually received anything of substantial value from Irwin in exchange for her promissory note.  Plaintiff acknowledges that Irwin issued her a check in the amount of $137,258.00.  But, Plaintiff apparently alleges that the check was redeposited, and that  Irwin only engaged in a transfer of assets on its own books that

1    provided her with no real value and was never backed by legal tender. As an initial matter,

2    such allegations, in and of themselves, are insufficient to state a claim.  *See, Pryzbylski v.*

3    *Stumpf,* No. CV-10-8073-PCT-GMS (D. Ariz. filed Jan. 4, 2011). *See, also*, *Rodriguez v.*

4    *Summit Lending solutions, Inc. et al.,* No 09-CV-773-BTM(NLS), 2009 Wl 1936795 (S.D.

5    Cal. July 7, 2009). Even assuming that such a claim might be plausible  under some

6    conceivable factual scenario, Plaintiff's Complaint does not allege sufficient facts to make

7    such a scenario plausible here.[1]

8        Further, in Plaintiff's Application for a TRO she states that she is a resident on the

9    property that is the subject of the deed of trust that secures the note that she gave in exchange

10   for the check and that she will be irreparably harmed if she loses the legal rights that belong

11   to her in that property.  Plaintiff appears to be simultaneously claiming that the proceeds of

12   the check provided her with no benefit, yet allows her to assert legal rights in the property

13   in which she resides.  Plaintiff is allowed to plead claims in the alternative.  In doing so,

14   however, the alternative claims must be supported by sufficient alternative factual pleadings

15   to make them plausible.  Plaintiff's Complaint falls short of that.

16       Thus, count one of Plaintiff's Complaint that asserts a breach of contract because "the

17   Defendants failed to lend the Plaintiffs lawful money of the United States and instead

18   submitted a check with the intended purpose of circulating it as money," Doc. 1 at ¶ 32, fails

19   to sufficiently plead facts to make her claim plausible.  It further fails to allege a claim

20   against any of the Midland Defendants.  The claim is thus dismissed against the Midland

21   Defendants with leave to seek to amend.

22   _____

23       [1]Attached to the Midland Defendant's Statement of Facts filed in Support of its
     Alternative Motion for Summary Judgment, is a settlement statement for Irwin's loan to the
24   Plaintiff which shows that, aside from various settlement charges, the balance of the loan
     ($130,964.55) went to Countrywide Funding to payoff a previous loan on the property.  The
25   Court does not  need to consider the statement in granting Midland's Motion to Dismiss for
     a failure to allege sufficient facts to state a plausible claim.  Nevertheless, should Plaintiff
26   seek leave to amend her complaint, she should consider her obligations under Fed. R. Civ.
     P. 11 before re-pleading that Plaintiff merely redeposited the proceeds of the check with
27
28   Irwin thus resulting in a meaningless and sham transaction.

1    In count two of Plaintiff's Complaint, Plaintiff alleges fraud due to Defendants use

2  of the US Mail and Wire Services to collect on the debt in violation of 18 U.S.C. §§ 1341 and

3  1343.    As Midland notes, however, even assuming Defendants violated the statutes

4  indicated, there are no private claims available to the Plaintiffs for such violations. *See*

5  *Wisdom v. First Midwest Bank of Poplar Bluff,* 167 F.3d 402, 407-08 (8th Cir. 1999); *Lynn*

6  *v. Earle,* 2006 WL 1030374 (D. Ariz. 2006). ("[T]he mail fraud statute- § 1341- does not

7  create an implied private right of action. . . .  The same is true of the wire fraud statute.").

8  Thus, to the extent the Complaint asserts claims for violations of these statutes, those claims

9  are dismissed as to the Midland Defendants with leave to seek to amend.

10    To the extent that Plaintiff otherwise seeks to assert claims of fraud against

11  Defendants she must "state with particularity the circumstances constituting fraud or

12  mistake." Fed. R. Civ. P. 9(b).  There are nine elements required to plead common law fraud

13  in Arizona. *Nielson v. Flashberg*, 101 Ariz. 335, 338, 419 P.2d 514, 517 (1966).  Each fraud

14  claim must be plead with particularity as to each Defendant against which Plaintiff raises

15  such claims.   A Plaintiff must "state the time, place and specific content of the false

16  representation as well as the identities of the parties to the misrepresentations." *Schreiber*

17  *Distrib. Co. v. Serv-Well Furniture Co.*, 806 F2d 1393, 1401 (9th Cir. 1986); *A.G. Edwards*

18  *& Sons, Inc. v. Smith*, 736 F. Supp. 1030, 1033 (D. Ariz. 1989) (holding that "[m]ere

19  conclusory allegations of fraud will not suffice; the complaint must contain statements of the

20  time, place and nature of the alleged fraudulent activities.").   The only allegations that

21  Plaintiff has made that might be considered allegations of fraud are those that are based on

22  her assertion that the check she was issued by Irwin in exchange for her promissory note and

23  deed of trust provided her with no real value backed by legal tender.  For the reasons above

24  stated, those allegations are insufficient to state a plausible claim against any of the Midland

25  Defendant.  Thus, count two of the complaint is dismissed as to the Midland Defendants with

26  leave to seek to amend.

27    Plaintiff's Complaint denominates its third count as one for usury.  Nevertheless,

28  Arizona law specifies that "any rate of interest" may be agreed to in writing.  A.R.S. § 44-

1201(A) (2003).  Thus, there is no cause of action for usury in the state of Arizona for contracts such as Plaintiff's.  Plaintiff points to no federal law that specifies a private right of action for usury.  To the extent that Plaintiff alleges that she has paid a rate of interest that exceeds the contracted rate, her claim for usury could be considered a claim for breach of contract.  Nevertheless, this argument seems to be founded on Plaintiff's assertion that the interest rate should be calculated on a loan balance that is no more than 5% of the loan proceed's face value of $137, 258.  Doc. 1 at ¶¶ 21, 37-38.  For the reasons set forth above, Plaintiff has alleged insufficient facts to make such a pleading credible.  Therefore, count three of the Complaint is dismissed against the Midland Defendants with leave to seek to amend.

For her fourth count, Defendant alleges a truth-in-lending claim that is difficult to exactly comprehend.  Its essence appears to be that Irwin never had sufficient funds to fund the loan.  Thus, it funded the loan in a face amount that was beyond it's customers deposits.  However, when Plaintiff redeposited those same funds with Defendants, Plaintiffs became the depositors, and Defendants were risking nothing and as a result, Plaintiff's debt to Defendants was paid by the deposit and Defendants had no right to transfer the note.  For the reasons stated above, none of these claims as pleaded meet the standard required by *Twombly*.  They are therefore dismissed against the Midland Defendants with leave to amend.

Further, in Plaintiff's Request for Temporary Restraining Order she seems to seek to add the assertions in her Complaint that her debt to Irwin was paid by Irwin's receipt of TARP funds or other bailout assistance from the federal government.  See, Doc. 6 at ¶ 25.  A lawsuit does not proceed in such a fashion.  A lawsuit is necessarily governed by the complaint and the answers to it.  The complaint must state, in one separate and distinct pleading, all of the claims that Plaintiff brings against each Defendant.  Plaintiff cannot informally "amend" the complaint by attempting to supplement her allegations in later motions, or responses thereto.  Therefore, any claims that Plaintiff wishes to raise against Defendants must be asserted in the amended complaint.

1   At any rate, Plaintiff's assertion that her promissory note has been paid in full by any

2   of the Defendants' receipt of any TARP funds or other form of government assistance is

3   without merit and does not state a claim.  *See, Pryzbylski v. Stumpf,* No. Cv-10-8073-PCT-

4   GMS (D. Ariz. filed Jan. 4, 2011).  The Complaint therefore is dismissed against the Midland

5   Defendants with leave for Plaintiff to seek to amend.  Should Plaintiff seek to bring a new

6   amended complaint against the Midland Defendants, however, she shall file a motion for

7   leave to file an amended complaint.   The motion shall attach the proposed amended

8   complaint and shall otherwise follow the requirements of Arizona Local Rules of Civil

9   Procedure 15.1.

10   Plaintiff is advised that the Court will not authorize the filing of an amended

11   complaint that merely restates the allegations of the original Complaint without sufficient

12   factual plausible factual allegations  to make her claims against the Midland Defendants

13   plausible.  *Bell Atlantic v. Twombly,* 550 U.S. 544, 570 (2007).

14   **II.     The Motion For Temporary Restraining Order.**

15   Federal Rule of Civil Procedure 65 authorizes the Court to issue a preliminary

16   injunction or Temporary Restraining Order ("TRO") upon a proper showing. The standard

17   for issuing a TRO is the same as that for issuing a preliminary injunction. *See Brown Jordan*

18   *Int'l, Inc. v. The Mind's Eye Interiors, Inc.*, 236 F. Supp. 2d 1152, 1154 (D. Haw. 2007). To

19   prevail on a request for a preliminary injunction, a plaintiff must show either "(a) probable

20   success on the merits combined with the possibility of irreparable injury or (b) that [it] has

21   raised serious questions going to the merits, and that the balance of hardships tips sharply in

22   [its] favor." *Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003). The Ninth

23   Circuit has explained that "these two alternatives represent 'extremes of a single continuum,'

24   rather than two separate tests. Thus, the greater the relative hardship to the moving party, the

25   less probability of success must be shown." *Immigrant Assistant Project of LA County Fed'n*

26   *of Labor (AFL-CIO) v. INS*, 306 F.3d 842, 873 (9th Cir. 2002) (citation omitted).

27   In this case, Plaintiff strenuously contends that each of the elements for a TRO are

28   met. She fails, however, to explain how the applicable facts and law merit injunctive relief.

With respect to his argument that his request for a TRO "clearly establish[es] a reasonable likelihood of success on the merits," Plaintiff simply offers the following:

> [It] is clearly evident the Defendants' conduct set forth in Plaintiff's Complaint, Responses and Replies is wrongful and violates her legally protected rights.

Doc. 6 at ¶ 23. This conclusory statement, however, is insufficient to merit a TRO. And, as the discussion above demonstrates, the allegations made in Plaintiff's Complaint are, at this point, insufficient to state a claim against the Midland Defendants and demonstrate no sufficient likelihood of success against the Irwin Defendants. As the Supreme Court has repeatedly held, temporary injunctive relief will not be granted "unless the movant, *by a clear showing*, carries the burden of persuasion" of showing a likelihood of success on the merits. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

Further, in the Motion for Temporary Restraining Order, Plaintiff suggests that a non-judicial foreclosure of the deed of trust has already occurred. *See*, Doc. 6 at ¶ ¶ 9 and 15. If this is so, it is unclear just what Plaintiff would have the Court temporarily restrain.

**IT IS THEREFORE ORDERED**:

1.     Granting the Midland Defendants' Motion to Dismiss (Doc. 4), with leave to seek to amend.

2.     Should Plaintiff desire to file a motion for leave to file an amended complaint, she shall do so no later than **February 10, 2011**. The proposed amended complaint shall be attached to the motion for leave to amend. The Court will not permit the filing of any proposed amended complaint that does not comply with the requirements of this Order.

3.     If Plaintiff does not file a motion requesting leave to file an amended complaint by **February 10, 2011**, the Clerk of the Court is directed to terminate Midland Mortgage Corporation.

4.     Denying Plaintiff's Motion for a Temporary Restraining Order (Doc. 6).

DATED this 11th day of January, 2011.

G. Murray Snow
United States District Judge